STATE v. J. M. SMITH.

*Town  Charters— Working on the Streets Compulsory—The Code,* §§ 3803, 3818, 3820, 3827.

1. The charter of a town authorized its·commissioners to adopt ordinances and regulations "for the improvement of the streets." The town commissioners passed an ordinance requiring all male citizens, between the ages of eighteen and forty-five years, to work a certain number of days on the streets, and imposing a fine or imprisonment for wilful refusal so to do: *Held*, that such ordinance is valid, and a violation of it was a misdemeanor, within the jurisdiction of the Mayor of the town, under *The Code*, §§ 3818, 3820.

2. All towns have the right to enforce such ordinances as the above, unless inconsistent with their charters, by virtue of *The Code*, §§ 3803, 3827.

CRIMINAL ACTION, tried before *Philips, J.*, at Spring Term, 1888, of RICHMOND Superior Court.

The defendant was arrested by virtue of a criminal warrant, issued by the Mayor of " the town of Rockingham," on the 11th day of February, 1888, wherein he was charged with having violated the *ordinance No.* 20 of that town, in that, on the 27th day of January, 1888, he " did unlawfully and wilfully fail to attend and work the streets and roads of the town of Rockingham, after being legally summoned so to do by the Town.Constable," &c.; and he was taken before the mayor, before whom he confessed that he had so refused to work on the said streets and roads; whereupon the Mayor gave judgment that he be fined the sum of two dollars, and he, having excepted, appealed to the Superior Court of the county of Richmond.    In the latter Court he pleaded formally, not guilty.

On the trial, the jury rendered a special verdict to the effect that the defendant was, at and before the time specified. between the ages of 18 and 45 years; that he wilfully failed and refused to attend and work on the streets and roads of the town mentioned in the warrant, after he had been duly notified so to do; that he was a tax-payer of that town; that no part of the taxes levied for defraying its expenses were applied to keeping the streets and roads therein in repair, and in opening the same, except for the purchase of lumber for the sidewalks and building bridges on the streets laid out but not completed; that the said *ordinance No.* 20 provided as follows, that is to say: " That every male citizen residing in the corporate limits of said town, between the ages of eighteen and forty-five years, shall work the streets and roads of the town, under the direction of the Town Constable, three or more days in each year, that may be necessary to keep said streets and roads in a good condition.    Any person liable to work on the streets and roads, who shall wilfully fail to attend and work

when summoned so to do, after notice of two days, by the town constable, shall be guilty of a misdemeanor, and fined two dollars, or imprisoned two days, upon conviction before the Mayor of said town."

The Court being of the opinion that the defendant was not guilty, a verdict to that effect was entered; thereupon, the Court gave judgment for the defendant, and the Solicitor for the State, having excepted, appealed to this Court.

*The Attorney General* and *Mr. E. C. Smith*, for the State.
No counsel for the defendant.

MERRIMON, J. (after stating the facts). The statute (*The Code*, § 3820) makes it a misdemeanor for any person to violate an ordinance of a city or town, punishable by fine not exceeding fifty dollars or imprisonment not exceeding thirty days. And it (§ 3818) gives the Mayor, or other chief officer of towns or cities, jurisdiction of such offences. *State* v. *Cainan*, 94 N. C., 880; *State* v. *Wood*, *ibid.*, 855. So that the Mayor had jurisdiction of the offence charged in the warrant, if, indeed, it was committed, and this depends upon the validity of the ordinance in question. It is not denied that the defendant violated it, as charged, if it had validity.

The "town of Rockingham" is incorporated, and its charter (Pr. Acts 1887, ch. 101, § 19) confers upon its Commissioners very large and comprehensive powers. It provides that they "shall have power to make such by-laws and adopt such regulations or ordinances for the government of said town as a majority of them may deem necessary to promote the interest and insure the good order and government of said town, for the *improvement of the streets*, and the preservation of the health in the same, and to make all such other police regulations as the interest, comfort and convenience of the citizens of said town may require;" and section 26 thereof empowers them "to open and lay out any new

street or streets within the corporate limits of said town, * * * to widen, enlarge, make narrower, change, extend, or discontinue any street or streets, or any part thereof, within the corporate limits thereof," &c.

In the absence of some provision otherwise appearing, expressly or by reasonable implication, the power thus conferred implied the further power and authority to employ means appropriate to accomplish such important purposes. Otherwise, the power conferred to improve, repair and keep in repair existing streets, and to open and change others, would be useless and nugatory. · It is not to be presumed that such practical absurdity was intended.

It did not contravene any principle of law or any statutory provision to require all male residents of the town between the ages of eighteen and forty-five years to render reasonable compulsory services for such purpose, notwithstanding they may have paid taxes for other purposes. Every one may, in a proper way, be required to contribute of his personal services, or his means, in the shape of assessments of money, or taxes proper, towards the due administration and enforcement of all just police regulations properly established. This is a part of the price he must pay for the support, advantage and protection of the government under which he lives, and of which he takes benefit in the protection of his life, liberty and property. Government could not live and be efficient without such exactions and contributions properly applied.

The laws of this State from the earliest period of its existence have required the ordinary highways to be laid out and kept in repair, mainly, if not altogether, by compulsory services of the inhabitants of the districts or localities in which they were situate. Such assessments or exactions of service is a public charge, in addition to ordinary taxes, and is an appropriate means of keeping the public roads in proper

repair, and there is no legal reason why streets and roads within towns and cities may not be laid out, and be kept in repair by the like means, if their charters so allow. Cooley on Const. Lim., 637, 638; Dill. on Mun. Corp., secs. 678 (and note), 762.

The Commissioners had ample power to make the *ordinance* in question. The charter gave them authority, as we have seen, to "adopt such regulations or ordinances for the government of said town as a majority of them may deem necessary to promote the interest and insure the good order and government of said town, *for the improvement of the streets,*" &c., and there is no word or provision in it that restricts the power in respect to the manner or method of keeping the streets in repair. This Court, in *State* v. *The Commissioners of Halifax,* 4 Dev., 345, in interpreting a charter provision substantially like that we now have under consideration, held that the Commissioners of Halifax had authority to require the inhabitants of the town, subject to work on the public roads, to work on the streets.

That case is very much in point here, and fully sustains what we have said.

But if there could be any doubt as to the interpretation of the provision in question, it is removed by the general statute (*The Code,* § 3803), in respect to *towns* and *cities,* which expressly confers upon the Commissioners thereof power to require streets to be laid out and kept in repair by assessments of labor against the inhabitants thereof. This provision is applicable to "the town of Rockingham," because not inconsistent with its charter, or any particular statutory provision in respect to it (*The Code,* § 3827).

There is, therefore, error. The Court should, upon the special verdict, have directed a verdict of guilty to be entered and given judgment upon the same. The verdict of not

guilty must be set aside, and a verdict of guilty entered, and further proceedings had in the Court below according to law. To that end, let this opinion be certified to that Court.

Error.                                          Reversed.